E-FILED
Thursday, 19 May, 2005 02:28:48 PM
Clerk, U.S. District Court, ILCD
Thursday, 05 May, 2005 02:26:23 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| GUSTAVE BREDEMEYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 05- *L. 104* |
| | ) |
| ADMINASTAR FEDERAL, INC. | ) Removed from the Circuit Court |
| (Medicare), MEMORIAL MEDICAL | ) 7th Judicial Circuit, Sangamon County |
| CENTER and ILLINOIS DEPARTMENT | ) Case No. 2005L00104 |
| OF PUBLIC AID (Medicaid), | ) |
| | ) |
| Defendants. | ) |

## NOTICE AND PETITION OF REMOVAL

To: Sangamon County Circuit Clerk
7th Judicial Circuit
P.O. Box 1299
Springfield, IL 62705-1299

Illinois Medicaid
P.O. Box 19129
Springfield, IL 62794-9129

Fred W. Nessler
Attorney for Plaintiff
536 N. Bruns Lane
Suite One
Springfield, IL 62702

Memorial Medical Center
701 N. First Street
Springfield, IL 62781

    1. The United States, on behalf of the Medicare program, removes this claim to the United States District Court for the Central District of Illinois. 28 U.S.C. §§ 1441-1442.

    2. The United States attaches a Petition to Adjudicate Medical Liens, which seeks to provide no payment at all to the Medicare program. (Petition, ¶ 13)

    3. This Petition seeks to avoid the legal obligation imposed by the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b)(2), as explained by the Centers for Medicare and Medicaid Services in the letters attached to the Petition.

WHEREFORE, the United States removes this claim to the United States District Court for the Central District of Illinois.

Respectfully submitted,
JAN PAUL MILLER
United States Attorney


s/ James A. Lewis
By: _____
James A. Lewis, NC Bar No. 5470
Attorney for Defendant
United States Attorney's Office
318 South Sixth Street
Springfield, IL 62701
Telephone: 217/492-4450
Fax: 217/492-4888
email: jim.lewis2@usdoj.gov

## **VERIFICATION**

I affirm, under the penalty of perjury, that the allegations of this Notice and Petition are true and correct, based upon information provided to me.


May 4, 2005                              s/ James A. Lewis
Date:_____                 _____

                                         Attorney

*received 4-18-05 3:10pm HD*

# IN THE CIRCUIT COURT OF THE 7TH JUDICIAL CIRCUIT
## SANGAMON COUNTY, ILLINOIS

|  |  |  |  |
|---|---|---|---|
| GUSTAVE BREDEMEYER, | ) | | |
| | ) | | |
| Plaintiff | ) | | **2005L00104** |
| | ) | | |
| v. | ) | No. | |
| | ) | | |
| ADMINASTAR FEDERAL, INC. | ) | | |
| (Medicare), MEMORIAL MEDICAL | ) | | |
| CENTER, and ILLINOIS DEPARTMENT | ) | | |
| OF PUBLIC AID (Medicaid), | ) | | |
| | ) | | |
| Defendants. | ) | | |

## SUMMONS

To Each Defendant:   James Lewis, Assistant U.S. Attorney
                    318 South 6th Street, Springfield, IL 62701

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this Court, within 30 days after service of this summons, exclusive of the date of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed for in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS, Tony Libri, the Clerk of Said Court, and the seal thereof, at Springfield, Illinois, this 14 day of Apr. 2005.

_____, Clerk

Plaintiff's Attorney:
**The Law Offices of Frederic W. Nessler**
**536 North Bruns Lane, Suite One**
**Springfield, Illinois 62702**
**Telephone:(217) 698-0202**
**Fax:(217) 698-0203**

Date of Service:_____, 2005
(To be inserted by officer on copy left with
Defendant or other person)

## STATE OF ILLINOIS
### IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT OF ILLINOIS
### SANGAMON COUNTY, ILLINOIS

| | | |
|---|---|---|
| GUSTAVE BREDEMEYER, | ) | 2005L00104 |
| Plaintiff | ) | |
| v. | ) | No. |
| ADMINASTAR FEDERAL, INC. (Medicare), MEMORIAL MEDICAL CENTER and ILLINOIS DEPARTMENT OF PUBLIC AID (Medicaid), | ) | JURY DEMANDED FILED |
| Defendants. | ) | APR 1 4 2005 CIV.-3 |

Clerk of the
Circuit Court

## PETITION TO ADJUDICATE MEDICAL LIENS

**NOW COMES** Petitioner, **GUSTAVE BREDEMEYER,** by and through his attorneys, The Law Offices of Frederic W. Nessler & Associates, and in his Petition to Adjudicate Medical Liens filed by ADMINASTAR FEDERAL, INC. (Medicare), MEMORIAL MEDICAL CENTER and ILLINOIS DEPARTMENT OF PUBLIC AID (Medicaid) against plaintiff's personal injury claim, states as follows:

1.     On February 28, 2004, Petitioner, Gustave Bredemeyer, was struck by a motor vehicle while he attempted to cross Ninth Street in Springfield, Illinois. He suffered severe injuries in the crash, including multiple fractures, lacerations, soft tissue injuries and closed head injury. The facts of the case were that Bredemeyer was injured while crossing the street outside of the crosswalk designated for use by pedestrians during a busy traffic hour. Plaintiff underwent several surgical procedures at Memorial Medical Center. As a result of his injuries he is no longer able to live independently. Petitioner currently resides in a long term care facility, has no income and no assets of value.

2.     At the time of the motor vehicle accident, Mr. Bredemeyer was a subscriber to, and received benefits from, Medicare and Medicaid. Following the crash, he was hospitalized at Memorial Medical Center. Memorial Medical Center accepted Mr. Bredemeyer as both a Medicare and Medicaid patient. (See attached Exhibit A by this reference incorporated herein).

3.     Subsequent to the February 28, 2004 collision, Mr. Bredemeyer retained the legal services of The Law Offices of Frederic W. Nessler to investigate and prosecute a claim against the driver of the vehicle that struck him.

4.     Plaintiff settled his cause of action with the driver of the vehicle for $25,000.00 Twenty-five Thousand and No/100 Dollars. Procurement costs of the settlement total $9,113.61 itemized as follows:

        a)    $8,333.33 in attorney's fees;and

        b)    $780.28 for litigation costs.

After accounting for the attorney's fees and costs, $15,886.39 remains to be disbursed to Mr. Bredemeyer and *all* the entities claiming liens. Liens filed pursuant to provisions of the Hospital Lien Act are inferior to the attorneys' statutory lien, including costs and litigation expenses. Carlson v. Powers, 225 Ill.App.3d 410 (2nd Dist. 1992). Attached to this petition and hereby incorporated by reference as Exhibit B, is a proposed Settlement Distribution Sheet, which reflects the total settlement amount and the distribution required, if all liens are to be paid.

5.     As a result of the collision, Mr. Bredemeyer incurred medical expenses in excess of $320,000.00. The following entities/providers claim liens against the settlement proceeds in the described amounts:

        a.    Memorial Medical Center:        $302,637.72
        b.    Medicaid:                      $6,230.82
        c.    Medicare/ Administar Federal, Inc.    $15,824.02

3:05-cv-03107-JES-BGC     # 2-2     Page 6 of 29

6.    Petitioner contends that Memorial Medical Center is not entitled to recoup any amount of money from the settlement proceeds.  Due to the fact that Memorial Medical Center accepted Gustave Bredemeyer as a Medicare/Medicaid patient, it is now barred from asserting any lien rights against Mr. Bredemeyer.  Lopez v. Morley, 817 N.E.2d 592 (2nd Dist. 2004). Since Memorial Medical Center accepted an amount of money in satisfaction of its bills for services under its contracts with Medicare and Medicaid, it cannot claim further liens against the petitioner.  Therefore, Memorial Medical Center's claimed lien should be adjudicated to $-0-.

7.    Pursuant to 1870(c) of the Social Security Act, Petitioner timely requested a waiver of the Medicare lien and timely filed the required forms requesting the lien of Medicare be waived. *Three months* after the waiver request forms were completed and returned to Medicare, Medicare advised Petitioner's attorneys that the waiver request had been denied in total.  In addition to this untimely response and denial, Medicare is claiming a lien against the settlement in the amount of $15,824.02.  Medicare also stated that interest was being added to the lien amount at an 11.75% monthly rate on the remaining unpaid lien.  It further stated that interest had already been added to the lien because 60 (sixty) days had passed since the lien amount was provided.  (See Exhibit C attached hereto and by reference incorporated herein).

8.    Further, Medicare has now noticed the undersigned of its Intent to Refer Debt to the Department of Treasury for Debt Collection with the new balance owed being just under $17,000.00.  (See Exhibit D attached hereto and by reference incorporated herein).

9.    Petitioner contends that AdminaStar Federal, Inc. (Medicare) has provisions for waiving liens when an adjustment or recovery would "be against equity and good conscience."

10.    Petitioner has no current income and lives in an assisted living facility.  He is unable to provide himself with common, everyday necessities of life.

11.    Petitioner has tried to resolve this matter by way of administrative resolution. Administar Federal/Medicare has failed to promptly address issues regarding this case and have been uncooperative in resolving this matter in a fair, efficient manner.    Administar Federal/Medicare has failed to comply with their own administrative guidelines and procedures, resulting in prejudicial results for the Petitioner.  Specifically, Administar Federal/Medicare has failed to follow the reimbursement guidelines set forth in 42 CFR 433.139.  Accordingly, Adminastar Federal/Medicare's right to reimbursement should be declared null and void and inoperative in this case.

12.    Any further delay in adjudication of these issues will result in prejudicial and detrimental results for Mr Bredemeyer.

13.    Petitioner respectfully requests that this Court adjudicate the claimed liens as follows:

|   |   |   |
|---|---|---|
| a. | Memorial Medical Center | $-0- |
| b. | Administar Federal, Inc. (Medicare) | $-0- |
| c. | Medicaid | $-0- |

**WHEREFORE**, Plaintiff, GUSTAVE BREDEMEYER, prays that this Honorable Court make a determination as follows:

(a)    find that Adminastar Federal/Medicare has failed to comply with administrative guidelines set forth in 42 CFR 433.139, resulting in prejudicial results to petitioner;

(b)    declare Administar Federal/Medicare's claimed right of reimbursement as null and void and of no effect, and

(c)    adjudicate the following claimed liens as follows:

|   |   |   |
|---|---|---|
| 1. | Memorial Medical Center | $-0- |
| 2. | Adminastar Federal/Medicare | $-0- |

3.    Medicaid                    $-0-

or in the alternative;

(d)    reduce said liens to amounts considered to be reasonable and fair in light of

surrounding circumstances.

Respectfully submitted,

GUSTAVE BREDEMEYER, Petitioner

By: _____
One of His Attorneys

Fred W. Nessler
THE LAW OFFICES OF FREDERIC W. NESSLER
536 North Bruns Lane, Suite One
Springfield, IL 62702
(217) 698-0202
(217) 698-0203 Fax

MEMORIAL MEDICAL CENTER
701 North First Street
Springfield, Illinois 62781

| Pt. Name and Address | IC: | ACCT NO: 152081618 | MR: 00087942 | D/T:04082004 16:21 | TYPE:II | SER:IMC |
|---|---|---|---|---|---|---|

BREDEMEYER,GUSTAVE EUGENE
1151 NORTH EIGHT STREET
SPRINGFIELD,IL 62704
(217)000-0000    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

Comments:
DP: Info Declined    LW:Info Declined
Rm/Bd:G43001    BD:06/16/1927    76Y M R:C    Fm. Dr:UNKNOWN

Pt Occup & Employer's Info

RETIRED

Adm Dr:FORTUNE, JOHN B.    PV:00//    MS:D    Rlgn:UNK  UNK

Add'l Dr:UNKNOWN    Mthr's Nm:VIOLA

Dx:ABD.    Adm By: HRC
Chg'd By:BLS

Prio:URGENT    Src:PHYSICIA Cond Codes:    C5 09

)  -    R Dt: / /

Emergency Contact 1    TR#    Acc Type: I    DT: / /

BREDEMEYER,ARMIN E
1413 SOUTH GRAND EAST
SPRINGFIELD,IL 62703

Primary Insurance:    MEDICARE
   3001    P.O. BOX 812893
(312)-938-0483    Chicago;IL 606812893
Card Avail: Y TAR#
         Pt. or Subscriber's Initials:

Hm Phone:(217)753-2058
Wk Phone:( )  -
Relation:Parent

Group Number:
Policy Number:    338201901A
Insured's Name:    BREDEMEYER,GUSTAVE EUGENE
Group Name:

Ins Ver:

Guarantor's Name & Address
BREDEMEYER,GUSTAVE EUGENE
1151 NORTH EIGHT STREET
SPRINGFIELD,IL 62704

(217)-000-0000 SS: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

Sec Insurance:    ILLINOIS MEDICAID
   5001    PO Box 19129
(217)-782-0502    SPRINGFIELD,IL 627949129
Card Avail:    TAR# NA
         Pt. or Subscriber's Initials:

Guarantor's Occup & Employer

RETIRED

( )  -

Group Number:
Policy Number:    067695858
Insured's Name:    BREDEMEYER,GUSTAVE EUGENE
Group Name:

Residents    Delivering Physician:

Other Physicians:

EXHIBIT
A

### PENDING SETTLEMENT SHEET

CLIENT:        Gustave Bredemeyer
CLIENT NO.:  04-0092
DATE:           09-08-04
D/O/L           02-28-04

TOTAL SETTLEMENT:                                                          $25,000.00

Less:

       ATTORNEY'S FEES:                          8,333.33

       COSTS:
       Telephone, Photocopies, Mileage & Postage:   200.00
       Medical Records & Reports:                          580.28

                                                               -9,113.61
Less Liens:

       IDPA                                                        -1,500.00
       (Reduced from $6,230.82)
       Memorial Medical Center                          -302,637.72
       (Only part was submitted to Medicare & Medicaid)
       Medicare                                                   -15,824.02
       (Plus interest with Waiver denied)

**Total to Client:**                                                       $-304,075.35

I, the undersigned, acknowledge receipt of this Settlement Sheet and fully understand the
contents hereof. I have authorized the itemized deductions of expenses and costs from my
recovery in this matter and acknowledge that same are fair and reasonable. **Finally, I accept full
responsibility for the payment of any and all medical bills incurred for my treatment in this
matter that are not itemized above.**

The amount shown as **TOTAL DUE CLIENT** shall be disbursed five banking days after the
check or draft is received by the office.

_____                                        _____

Client's signature                                                           Date


The amount shown as "Total to Client" will be mailed to you at the address specified below
within five (5) banking days after the insurance check or draft is received in our office.





**Medicare**

PART A INTERMEDIARY
BENEFICIARY 1-800-MEDICARE
PROVIDER    1-866-419-9457

RECEIVED
JAN 3 1 2005

January 25, 2005

The Law Offices of Frederic W. Nessler
536 N. Bruns Lane, Suite One
Springfield, IL  62702

RE:    Gustave E. Bredemeyer
HIC#: 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A
DOA:  February 28, 2004

Dear Mr. Nessler:

We have completed our review of your request for waiver of the outstanding Medicare claim against the settlement or recovery proceeds that your client received with respect to his February 28, 2004 accident. It is our determination that his circumstances do not fall within the criteria used to grant waiver, as set forth in our demand letter dated September 13, 2004.

You stated within your letter to our office dated September 13, 2004 that, based upon the Illinois Lien Act, the Medicare program is entitled to one-third of the total settlement amount equaling $8,333.33. You also subtracted Medicaid's interest in this matter stating that $6,833.33 remains to pay Medicare citing the same Illinois Lien Act. Medicare's priority right to recovery in all cases is a federally warranted right that supersedes State Law. Additionally, Medicare and Medicaid are two separate entities. Medicaid repayment is not viewed as an amount to be subtracted from Medicare's recovery.

You stated that your client did not receive full value in this case as your client was determined to be more than 50% at fault for the accident. The Medicare program is unable to grant a waiver solely on this basis as we must view the total settlement agreed upon by both parties, or awarded via court decision, to be the full value in any case.

No valid accident related out-of-pocket expenses have been submitted in this case in order to substantiate a financial hardship. No completed waiver forms were received.

After satisfying your office's procurement costs and had the Medicare program been repaid in a timely fashion, your client's portion of the overall settlement equaled $62.37. Our office has maintained a precedent that this is not an equitable portion of a settlement and this fact *can* warrant a partial waiver of Medicare's interest. However, in this case Medicaid maintains a $1,500.00 interest in the settlement proceeds. As stated previously, the Medicare program has a federally mandated priority right of recovery in all cases. For this reason, Medicare cannot waive dollars in order to allow for another third party with a lesser right of recovery to satisfy its lien amount.

It is for all of these reasons that we are denying your request that Medicare waive its interest.



EXHIBIT
C

Medicare's conditional payment for this accident equaled $24,901.83. The settlement received was $25,000.00. The procurement costs totaled $9,113.61. After allowing $9,077.81 as Medicare's share of procurement costs under 42 C.F.R. 411.37(c), Medicare had a claim in the amount of $15,824.02 against the settlement proceeds. Also, on September 13, 2004, we notified you that interest would be assessed on any debt not repaid in full within 60 days of that date, regardless of whether you chose to appeal or to seek waiver of the debt. We advised you that repaying the debt would not have an affect on your right to dispute, appeal, or request waiver of the debt. Because you did not repay the debt in full within 60 days of September 13, 2004, $774.70 in interest has accrued.

Therefore, in accordance with this determination, the past due debt owed to Medicare as of this letter's date, including interest accrued through February 9, 2005, is $16,598.72. By regulation, interest is due and payable for each 30-day period as of the first day of that 30-day period. Be advised that interest is accrued monthly and is added to the balance of the debt. If the debt remains outstanding after February 9, 2005, the amount of the debt, including interest, will be $16,753.66. If no payment is received by March 11, 2005, the amount of the debt, including interest, will be $16,908.60.

Please send a check or money order in the amount owed the Medicare program made payable to **AdminaStar Federal – Medicare Division** to:

**AdminaStar Federal**
**Medicare MSP Part A**
**Illinois Subrogation Liability**
**Lockbox #660060**
**Indianapolis, IN 46266-0060**

The check or money order should also include your client's Medicare number in order to ensure that your client receives proper credit for any payment(s) made.

Exercising Common Law authority and consistent with the Federal Claims Collection Act and 45 CFR 30.13, interest will continue to be assessed at a rate of 11.75% if this debt is not repaid in full. Additionally, 45 CFR 30.14(a) provides that a debtor may either pay the debt, or be liable for interest on the uncollectible debt while an appeal or a formal or informal review of the debt is pending. Therefore, assessment of interest may not be suspended solely because further review is requested. It should be noted, however, that this debt may be repaid to avoid accruing charges, but your client would retain the right to dispute or appeal the debt. If you succeed in any appeal process, Medicare will refund your client's money.

If you disagree with the decision not to grant a waiver of recovery of this overpayment, you have 120 days from the date of this letter to request a redetermination. Such a request should be sent to the following address:

**AdminaStar Federal**
**Attn: MSP Auditors, CR2-886**
**P.O. Box 14330**
**Cincinnati, OH 45250-0330**

Your letter dated September 13, 2004 appeared to intimate both a waiver request and a compromise offer. If you continue to desire a compromise in this case, please forward your compromise offer, along with any other questions you may have concerning this case, to the address at the bottom of page one.

Sincerely,

Kevin Willis
Auditor/Representative
Medicare Secondary Payer

C:     Gustave Bredemeyer





RECEIVED
MAR 2 8 2005

Medicare Part A Intermediary
Medicare Secondary Payer

March 25, 2005

Gustave E. Bredemeyer
1404 N. Matthews St
Springfield, IL  62702-4447

Past-due debt owed CMS as of  3/25/2005:
Date debt became past-due:
Date of Demand Letter Previously sent:
Debt Identification numbers:
Taxpayer Identification Number (TIN):
Beneficiary's Name:
Beneficiary's HIC#:
Date of Accident/Incident:



$16,908.62
11/12/2004
9/13/2004
0013

Gustave Bredemeyer
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
2/28/2004

**NOTICE OF INTENT TO REFER DEBT TO THE DEPARTMENT OF TREASURY OR A DEPARTMENT OF TREASURY DESIGNATED DEBT COLLECTION CENTER FOR CROSS-SERVICING AND OFFSET OF FEDERAL PAYMENTS.**

(Please note that it is possible that this letter is being sent to you by a Medicare contractor other than the one who issued the request(s) for repayment that is (are) attached to this letter. This situation would occur whenever a one contractor has assumed responsibility for a particular workload from another contractor (usually because the initial contractor is leaving or has left the Medicare program).)

The Centers for Medicare & Medicaid Services (CMS) (formerly the Health Care Financing Administration (HCFA)) has determined that you are indebted to the Medicare program for the amount shown above and that this amount is delinquent. The amount shown includes principal and interest. This debt arose under the Medicare Secondary Payer (MSP) provisions of the Social Security Act. CMS has the right to collect this debt through offset of any payments due to the debtor. In addition, the Debt Collection Improvement Act (DCIA) of 1996 requires Federal agencies to refer delinquent debts to the Department of Treasury and/or a designated Debt Collection Center (DCC) for collection through cross-servicing, including the Treasury Offset Program(TOP). Under TOP, delinquent Federal debts are collected through offset from other Federal agency payments you may be entitled to, including the offset of your income tax refund through the referral of this debt to the Internal Revenue Service (IRS), and Federal benefit payments such as Social Security retirement or disability benefits. Treasury or a designated DCC uses various collection tools to collect the debts, including offset, demand letters, phone calls, referral to a private collection agency and/or referral to the Department of Justice or agency counsel for litigation.

AdminaStar Federal  *  P.O. Box 812912 * Chicago, Illinois  60681-2912
*A CMS Contracted Intermediary*



EXHIBIT
D

The purpose of this notice is to inform you of our intention to refer your debt to Treasury/a designated DCC, under the provisions of the DCIA, Title 31 United States Code, Section 3711 to collect this debt. This referral will permit the Department of Treasury and/or a designated DCC to use the aforementioned means of collection as well as to permit administrative offset of payments you may be receiving from other Federal agencies. During this collection process, interest will continue to accrue on the debt and you will remain legally responsible for any amount not satisfied through the collection efforts.

Please read the following instructions carefully as they may assist you in resolving this matter prior to referral.

Challenging the Indebtedness:

You have the right to request an opportunity to inspect and copy records relating to the debt. This request must be submitted in writing to the address listed below. Additionally, you have a right to present evidence that all or part of your debt is not past due or legally enforceable. In order to exercise this right, this office must receive a copy of the evidence to support your position. Please include a copy of this notice when corresponding with the agency regarding this matter. You must submit any evidence that the debt is not owed or legally enforceable within 60 days of the date of this letter. We will notify you within 30 days of receipt of the information of our determination as to whether the debt is still past due and legally enforceable. Failure to present any evidence will result in the automatic referral of the debt to the Department of Treasury/a designated DCC for cross-servicing/offset actions.

Your debt will not be referred for further collection action if you make payment in full. Please be advised that payment of principal only is not considered payment in full and will not satisfy this debt. By law, partial payments are applied to interest first and then to principal.

The past-due debt owed to CMS as of 3/25/05, including interest accrued through 4/10/2005, is $16,908.62. By regulation, interest is due and payable for each 30-day period as of the first day of that 30-day period. Be advised that interest is accrued monthly and is added to the balance of the debt. If the debt remains outstanding after 4/10/2005 the amount of the debt, including interest, will be $17,063.57. If no payment is received by 5/10/2005, the amount of the debt including interest will be $17,218.51; and if no payment is received by 6/9/05, the amount of the debt including interest will be $17,373.46. Please make your check or money order payable to AdminaStar Federal-MSP Unit, include a copy of this notice and forward both to the address below.

Send Correspondence To:    AdminaStar Federal
                           Attention: Mike Horton
                           P.O. Box 812912
                           Chicago, Illinois 60681-2912

Make Your Check Out To:    AdminaStar Federal, Inc.
                           Illinois – MSP-Med A-Liability

Lockbox # 660060
Indianapolis, IN 46266-0060

Your check should also include the "debt identification number" as shown at the beginning of this letter in order to ensure that you receive proper credit for your payment.

If you cannot make the payment in full, you may be allowed to enter into an extended repayment agreement.

Bankruptcy Related Information: If you have filed for bankruptcy **and** an automatic stay of bankruptcy is in effect, you are not subject to offset while the automatic stay is in effect. Documentation supporting your bankruptcy status, along with a copy of this notice, must be forwarded to this office at the above address in order to avoid referral.

Information for Individual Debtors Filing a Joint Federal Income Tax Return: TOP automatically refers debts to the IRS for offset. Your Federal income tax return is subject to offset under this program. If you file a joint income tax return, you should contact the IRS before filing your tax return to determine the steps to be taken to protect the share of the refund which may be payable to the non-debtor spouse.

If you have questions concerning this debt, extended repayment plans, and/or relating to the submission of evidence, you may contact: Mary Bennett at (312) 297-4611.

If you call, please be sure that you have this letter available so that you can readily provide us with the identification information provided at the beginning of the letter.

Sincerely,


Mike Horton
Manager
AdminaStar Federal-MSP Unit




Enclosures:

Demand Letter

cc: Frederic W. Nessler

## Supplemental Guidance on Resolving MSP Debts for Employers, Insurers, Third Party Administrators, Group Health Plans (GHP's), and Other Plan Sponsors

The Centers for Medicare & Medicaid Services (CMS) (formerly the Health Care Financing Administration (HCFA)) anticipates that the employer or insurer may ask its health insurance contractors (i.e., the group health plan (GHP) or any entity responsible for payment under the plan (employer, insurer, third party administrator (TPA), or other plan sponsor) to assist in resolving these Medicare Secondary Payer (MSP) debts. This is certainly acceptable. However, both the employer, the insurer, and other health insurance contractors must recognize that the date of Medicare's original demand letter is the date applicable to any defense that the employer, insurer, or health insurance contractors may have to any portion of this debt. The date that the employer, insurer (or other entity to the demand letter was issued) elected to share MSP claims information with a particular health insurance contractor is not relevant.

The numbered sections below show what you must take into consideration and what documentation you must provide if you wish to assert that the debt is not past due or legally enforceable. If you determine that you can resolve the debt based upon the information in a particular section, you do not need to proceed to the next numbered section.

The numbered sections will reference proper documentation. When copies of "individual claims", demand letters, and report identification numbers are requested, you may use the copies we are providing you but the information of most importance is documentation to support your defense.

No. 1

Many employers and entities that process claims for employer group health plans (EGHPs) organize their records by the name and unique identifier of the employee to whom individual or family health insurance coverage is afforded. We provide information on the individual (in most cases the employee) to whom the health insurance was afforded. This information is the primary insurance that usually covers the individual beneficiary that received the medical services. We have observed that some employers and claims processors neglect to check the MSP Summary Data Sheet and mistakenly assume that the beneficiary is an employee. Historically, the majority of MSP recovery claims have involved services provided to spouses of employed individuals. The employer and any health insurance contractors that assist the employer in this effort must utilize the individual claim and the associated MSP Summary Data sheet to determine coverage at the time services were provided.

No. 2

The health plan information that Medicare provided in the original demand letters was, in almost all cases provided by the employer in response to Internal Revenue Service (IRS)/Social Security Administration (SSA)/CMS Data Match questionnaires. In other cases, the health plan information was obtained from the beneficiary, the insurer, or the provider/physician/other supplier that furnished services to the beneficiary. Thus, the information is presumed to be accurate as of the time it was provided. Many employers offer employees the opportunity periodically to choose among several available group health plans. Because CMS was not advised of changes in employees' group health plan choices, the group health plan Medicare identified as providing the health insurance may not be correct as of the date particular services were provided to an identified beneficiary.

The MSP debt is still valid as long as the Medicare beneficiary, entitled to Medicare on the basis of age or disability, had coverage under any employer plan based on their own or a spouse's current employment status. In the case of a beneficiary entitled to Medicare

on the basis of ESRD (end stage renal disease), the debt is still valid if the beneficiary had coverage under any Employer plan on any basis. If you are unclear about your responsibility relative to ESRD, please call the Medicare contractor.

The original demand letters explain that interest is due on any debt that is not resolved timely (60 days from the date of the original demand letter) and advises the recipient of the applicable interest rate. Interest applies from the date of the demand letter for each 30-day period that the debt is unresolved. (Periods of less than 30 days are treated as a full 30-day period.) Accordingly, to resolve any MSP claim for which payment is due, the responsible entity (GHP, employer, insurer, third party administrator (TPA), or other plan sponsor) must pay both the principal due and the applicable interest. To assist the responsible entity in determining the amount due on any individual unresolved MSP debt and CMS in verifying that the correct payment has been made, the responsible entity should provide the Medicare contractor with the following information:

- A copy of the individual claim;
- Date of the original demand letter containing the claim;
- Associated report identification number for that claim as provided in the demand letter;
- Explanation of how the principal payment was determined; and
- Explanation of how applicable interest was computed.

The responsible entity (employer, insurer, third party administrator (TPA), group health plan, or other plan sponsor) should contact the Medicare contractor with any question on the exact amount the responsible entity owes.

## No. 3

It is possible that a beneficiary, entitled to Medicare on the basis of age or disability, did not have coverage under any employer plan based on their own or a spouse's current employment status at the time the services were provided, because the individual or his/her spouse had retired or left employment. If properly documented, the retirement or termination of the individual through whom the beneficiary had coverage is a valid defense to associated debts. Proper documentation would consist of the following:

- A copy of the individual claim;
- Date of original demand letter containing the claim;
- Associated reported identification numbers for that claim as provided in the demand letter;
- Identification of the individual through whom the beneficiary had coverage; and
- Certification of the date of retirement or termination of that individual.

We will consider all claims for which such a documented defense is provided and Medicare determines to be valid to be fully resolved.

## No. 4

It is also possible that a beneficiary who has employer plan coverage that is obligated to be a primary payer may have had services not covered by the employer's plan. This would mean that the services are not the responsibility of the employer's plan. If properly documented, this would be a valid defense to the debt associated with those services. Proper documentation would consist of the following:

- A copy of the individual claim with the non-covered services annotated;
- Date of the original demand letter containing the claim;
- Associated report identification number; and

- Copy of plan documents (e.g., Employee Services Handbook, Member Services Booklet, etc.) that establishes that the services are not covered under the plan with the applicable coverage terms annotated.

We will consider all claims for which such a documented defense is provided and Medicare determines to be valid to be fully resolved.

**No. 5**

It is possible that both Medicare and an employer plan made primary payment for the services identified on any unique MSP claim. If properly documented, an employer plan's full primary payment for the services on an MSP claim is a valid defense to the debt that had been associated with that claim. Proper documentation generally would consist of the following:

- A copy of the individual claim;
- Date of the original demand letter containing the claim;
- Associated report identification number for that claim as provided in the demand letter;
- Explanation of how the prior primary payment was determined; and
- Proof of payment (e.g., copy of remittance advice).

If the employer plan is an HMO and the employer plan's full primary payment responsibility was resolved by a capitation payment to the provider, physician or other supplier that treated the Medicare beneficiary, proper documentation would consist of the following:

- A copy of the individual claim;
- Date of the original demand letter containing the claim;
- Associated report identification number for that claim as provided in the original demand letter;
- Copy of the relevant portions of the HMO contract with the provider, physician or other supplier stipulating that the <u>only</u> payment obligation of the HMO was payment of a capitated amount;
- Proof that the capitated amount for the individual for the time period when the services were furnished was paid.

In these instances, Medicare will recover from the medical provider or supplier that received Medicare's payment.

**No. 6**

Most group health plans (GHPs) have established time limits during which claims must be submitted in order to qualify for payment. If a GHP or any entity responsible for payment under the plan (employer, insurer, third party administrator (TPA), or other plan sponsor ("responsible entities")) does not receive a claim within those time limits, the plan is not obligated to make payment (even if it would be obligated to make payment if the claim had been submitted prior to the expiration of the time limit). These time limits are typically called "timely filing" requirements. Applicable Federal law limits the ability of any responsible entity (including the employer/insurer/TPA/GHP/other plan sponsor) that received a demand letter to assert a timely filing defense to an MSP-based debt.

As a first point, the date of Medicare's original demand letter is the date applicable to any defense that the recipient of the demand letter, or any entity acting on its behalf may have to the debt or any portion of the debt. This is true regardless of which of these entities the original demand letter is issued to, and regardless of whether or not the demand is immediately shared among these entities. For example, the insurer may not establish a timely filing defense on behalf of an employer based upon the date the insurer received

the demand letter from the employer. The insurer may only establish a timely filing defense for the employer based upon the date of the demand letter to the employer.

Additionally, two different rules are applicable to the MSP claims that comprise the Medicare debts. These rules are explained below.

The first rule applies to all services, regardless of the date those services were provided. The recipient of the demand letter (regardless of whether it is the employer/insurer/TPA or other responsible entity) does not have a valid timely filing defense if either the employer, the insurer, the TPA, or other responsible entity had knowledge within the plan's timely filing period that the services were provided. This knowledge could come from a variety of sources, but is often due to the receipt of a claim from a provider, physician or other supplier (or the plan member) which included the services at issue.

The second rule applies to services provided on or after August 5, 1997, and further restricts the use of a timely filing defense. The Balanced Budget Act of 1997 eliminated timely filing defenses for at least 3 years from the date of the service. For services on or after August 5, 1997, there is no timely filing defense if Medicare's original demand letter is dated within 3 years of the date of the service. This rule applies even if the plan's timely filing period is less than 3 years. (If the services were on or after August 5, 1997, and Medicare's original demand letter is not dated within 3 years from the date of the service, then the first rule applies.)

Under the first rule, proper documentation of a timely filing defense would consist of the following:

- A copy of the individual Medicare claim supplied with the demand letter with the services for which the defense is offered annotated by the entity asserting the defense;
- The date of the original Medicare demand letter containing the claim (and the associated report identification number for Data Match recoveries);
- A copy of plan documents that establish the timely filing period with the applicable provisions annotated; and
- A written statement by or behalf of the recipient of the demand letter that claims records of all responsible entities exist for the time period when services were provided, were searched, and no record of the services being provided to the beneficiary were found.

Medicare considers all claims for which such a documented defense is provided to be fully resolved, subject to Medicare's subrogated appeal rights described in Step 7.

Remember that if a demand letter is sent to an employer and another responsible entity such as an insurer or TPA responds, the responding entity is assumed to be acting as the agent of the employer. In this situation, the date of the original demand letter to the employer is the date applicable to any asserted timely filing defense.

**No. 7**

When the entity that received the demand letter is a Third Party Administrator (TPA), the TPA will not be required to repay Medicare or provide a claim specific defense for services provided prior to August 5, 1997 if the TPA provides the following documentation:

- Copies of individual claims;
- Dates of original demand letters containing the claims;

- Associated report identification numbers for those claims as provided in the original demand letters;
- Copy of the relevant portion of the contract with the employer or other plan sponsor stipulating that the entity was a TPA only.

## No. 8

As explained in the original demand letter, in addition to its statutory recovery rights, Medicare also has subrogation rights. Medicare utilizes its subrogated rights to appeal a denial of payment due to a timely filing defense and/or seek waiver of the timely filing requirements to the same extent that the patient could appeal and/or seek such a waiver. Where there is a denial of payment based upon a timely filing defense, Medicare's original demand letter must be treated as a request for appeal of that denial. Similarly, if the right to seek a waiver of the plan's requirement exists, Medicare's original demand letter must be treated as a request for waiver. If such rights do not exist, a copy of the plan's documents that explain that such rights do not exist must be provided.

When a patient's rights to appeal a timely filing denial and/or to seek a waiver of the plan's timely filing requirements exist(s), the employer/insurer/TPA/GHP/other plan sponsor must apply the same criteria to Medicare's appeal and request for waiver as they would have had the appeal or waiver request been made by the patient. For example, if the timely filing requirement is always waived for the patient if the claim was not filed timely through no fault of the patient, the employer/insurer/TPA/GHP/other plan sponsor must waive the timely filing requirements for Medicare. Accordingly, before a case can be closed with respect to a particular service (or services) due to presentation of a valid fully documented timely filing defense, the employer/insurer/TPA/GHP/other plan sponsor must furnish to the contractor a notification that the appeal and waiver requests have been denied and provide copies of any provision upon which the denial is based. (This documentation is in addition to the information previously described as necessary for a timely filing defense.)

 

**MEDICARE**
*Part A Intermediary*

September 13, 2004

Frederic W. Nessler
The Law Of Frederic W. Nessler
536 N. Bruns Lane
Suite One
Springfield, IL 62702

Re:    Name:  Gustave E. Bredemeyer
       HIC #:  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a
       Date of Incident:  02/28/2004

Dear Sir/Madam:

This letter follows our earlier communication in which we advised you that you would have to pay Medicare back if you received money from a third party due to your February 28, 2004 accident/illness which caused medical expenses for which Medicare conditionally paid. We have now been advised that you have received such proceeds. This means that Medicare now has a claim against these proceeds in the amount of $$15,824.02, which represents Medicare's claim after reduction for procurement costs, in accordance with 42 CFR 411.37.

The Medicare Secondary Payer provisions of the statute, 42 U.S.C. 1395y(b) (2), preclude Medicare from paying for a beneficiary's medical expenses when payment "has been made or can reasonably be expected to be made promptly . . . under an automobile or liability insurance policy or plan (including a self-insured plan) or under no-fault insurance." However, Medicare will pay for a beneficiary's covered medical expenses when the third party payer does not pay promptly, conditioned on reimbursement to Medicare from proceeds received from a third party liability settlement, award, judgment or recovery. In your case, Medicare made a conditional payment in the amount of $24,901.83. A list of the claims used to arrive at this total is enclosed.

Medicare's regulations require that you pay Medicare back within 60 days of your receipt of settlement or insurance proceeds. It is our understanding that 60 days have passed since you received the insurance proceeds. Therefore, please send a check or money order in the amount of $$15,824.02, made payable to AdminaStar Federal in the enclosed envelope.

Exercising Common Law authority and consistent with the Federal Claims Collection Act, interest will be assessed if this debt is not repaid in full within 60 days of the date of this letter. Additionally, 45 CFR 30.14(a) provides that a debtor may either pay the debt, or be liable for interest on the uncollectible debt while a waiver determination, appeal, or a formal or informal

AdminaStar Federal, P.O. Box 812912
Chicago, Ill. 606812912
.

review of the debt is pending. Therefore, assessment of interest may not be suspended solely because further review is requested. Interest will be assessed at an annual rate of 11.75%. It should be noted, however, that you may repay the debt to avoid accruing charges, but retain the right to dispute, appeal, or request waiver of the debt. If you succeed in the appeal or waiver request, Medicare will refund your money.

If you do not repay this overpayment, Medicare has the authority to refer it to the Social Security Administration or Railroad Retirement Board for further recovery action, which may result in the overpayment being deducted from any monthly Social Security or Railroad Retirement benefits to which you may be entitled.

If you are unable to refund this amount in one payment, you may ask us to consider whether to allow you to pay in regular installments.

The law requires that you must repay an overpayment to Medicare unless both of the following conditions are met:

(1) This overpayment was not your fault, because the information you gave us with your claim was correct and complete as far as you knew, and, when the Medicare payment was made, you thought that it was the right payment for your claim,

AND

(2) Paying back this money would cause financial hardship OR would be unfair for some other reason.

If you believe that BOTH of the conditions above apply in your case, please let us know, giving a brief statement of your reasons. You will be sent a form asking for information about your income, assets, and expenses, and requesting that you explain why you believe you are entitled to waiver of the overpayment. You will be notified if recovery of this overpayment can be waived.

You may appeal our decision if: you disagree that you received an overpayment; or you disagree with the amount of overpayment; or you disagree with our decision not to waive your repayment of the overpayment.

For Part A and Part B services, you must appeal within 120 days of the date of this notice. If you disagree with any claims decision on either Part A or Part B of this notice, you can request an appeal by January 11, 2005. Appeals should be directed in writing to: AdminaStar Federal.

If you decide to appeal this determination further, and if you want help with your appeal, you can have a friend, lawyer or someone else help you. Some lawyers do not charge unless you win your appeal. There are groups, such as lawyer referral services, that can help you find a lawyer. There are also groups, such as legal aide services, who will provide free legal services if you qualify.

If you have any questions about this letter, you may contact Larry Hill, of this office, at (312) 297-4620 or any Social Security Office.

Sincerely,


Medicare Secondary Payor


Enclosures:   List of Claims
              Calculation Sheet

cc:  Gustave E. Bredemeyer

# Medicare Liability Settlement Claim Reimbursement Summary

September 13, 2004

**Beneficiary:** Gustave E. Bredemeyer

**HIC #:** 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a

| | | |
|---|---|---|
| 1) | Amount of Settlement: | $25,000.00 |
| 2) | Total Medicare Payments: | $24,901.83 |
| 3) | Attorney\Fees: | $8,333.33 |
| 4) | Other Procurement Costs Incurred: | $780.28 |
| 5) | Total Procurement Costs: (lines 3 + 4) | $9,113.61 |
| 6) | Ratio of Procurement Costs to Settlement: (line 5 / line 1) | 00.364544 |
| 7) | Medicare's Share of Procurement Costs to Settlement: (line 2 x 6) | $9,077.81 |
| 8) | Medicare's Claim to be Recovered (subtotal): (line 2 - 7) | $15,824.02 |
| 9) | Interest Accrued: | $0.00 |
| 10) | Medicare's Claim to be Recovered: | $15,824.02 |

**Please prepare the check exactly as specified below:**

AdminaStar Federal for: **$15,824.02**

If any questions arise, please call: **Larry Hill**

at: **(312) 297-4620**

# PAYMENT SUMMARY FORM

Print Date: September 13, 2004

\* Total Conditional Payment Amount: $24,901.83

Beneficiary Name: Gustave E. Bredemeyer           HIC#: 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A

Date of Incident: 02/28/2004

\* Total Conditional Payment Amount Is Subject To Change If Additional Payments Are Made.

| TOS | Provider Name | Date of Service | | Total Charges | Reimbursed Amount | Conditional Payment Amount |
|-----|---------------|-----------------|---|---------------|-------------------|------------|
| I | MEMORIAL MEDICAL CTR | 03/18/2004 | 04/01/2004 | 20,358.83 | 18,984.26 | |
| O | VNA Central Illinois | 04/02/2004 | 04/02/2004 | 1,756.72 | 18,984.26 | 18,984.2 |
| B | ALT CRE SRV IN | 04/01/2004 | 04/01/2004 | 119.65 | 1,756.72 | 1,756.7 |
| B | CASEY MUEHLE | 04/16/2004 | 04/16/2004 | 41.50 | 95.72 | 95.7 |
| B | CHRISTOPHE R WOHLTMANN | 03/08/2004 | 03/14/2004 | 2,121.00 | 7.32 | 7.3 |
| B | CHRISTOPHER A FIEDLER | 04/18/2004 | 04/18/2004 | 679.00 | 606.09 | 606.0 |
| B | DAVID L GRIFFEN | 02/28/2004 | 02/28/2004 | 217.00 | 93.26 | 93.2 |
| B | DAVID M AYOUB | 03/13/2004 | 03/13/2004 | 41.50 | 48.78 | 48.7 |
| B | DAVID M AYOUB | 04/09/2004 | 04/09/2004 | 41.50 | 7.32 | 7.33 |
| B | DAVID RAY ALEXANDER | 04/13/2004 | 04/13/2004 | 41.50 | 7.32 | 7.33 |
| B | GEORGE R MAGRE | 02/28/2004 | 02/28/2004 | 532.00 | 7.32 | 7.33 |
| B | GEORGE R MAGRE | 02/28/2004 | 03/02/2004 | 208.00 | 92.23 | 92.23 |
| B | GEORGE R MAGRE | 02/29/2004 | 03/01/2004 | 83.00 | 41.90 | 41.90 |
| B | JOHN B FORTUNE | 03/01/2004 | 03/07/2004 | 5,688.00 | 14.64 | 14.64 |
| B | JOHN B GILL | 02/28/2004 | 02/28/2004 | 83.20 | 1,334.80 | 1,334.80 |
| B | JOHN B GILL | 02/29/2004 | 02/29/2004 | 41.60 | 14.04 | 14.04 |
| B | JOHN P SUTYAK | 02/28/2004 | 02/29/2004 | 1,450.00 | 7.02 | 7.02 |
| B | JOHN P SUTYAK | 03/18/2004 | 03/18/2004 | 130.00 | 256.97 | 256.97 |
| B | JOHN P SUTYAK | 04/18/2004 | 04/18/2004 | 3,314.00 | 42.89 | 42.89 |
| B | KANCHAN GUPTA | 04/12/2004 | 04/12/2004 | 41.50 | 473.78 | 473.78 |
| B | KANCHAN GUPTA | 04/14/2004 | 04/15/2004 | 83.00 | 7.32 | 7.32 |
| B | KENNETH LEE KRAUDEL | 04/17/2004 | 04/17/2004 | 41.50 | 14.64 | 14.64 |
| B | KENNETH LEE KRAUDEL | 04/18/2004 | 04/18/2004 | 41.50 | 7.32 | 7.32 |
| B | KEVIN J COAKLEY | 04/08/2004 | 04/08/2004 | 50.00 | 7.32 | 7.32 |
| B | LUCY A CHRISTOPHERSO | 03/02/2004 | 03/02/2004 | 166.50 | 9.34 | 9.34 |
| B | LUCY A CHRISTOPHERSO | 04/12/2004 | 04/12/2004 | 41.50 | 34.58 | 34.58 |
| B | Medicare Part B | 02/28/2004 | 02/28/2004 | 509.00 | 7.32 | 7.32 |
| B | Medicare Part B | 03/19/2004 | 03/19/2004 | 64.20 | 213.52 | 213.52 |
| B | RANDOLPH S MARTIN | 03/01/2004 | 03/01/2004 | 41.60 | 40.83 | 40.83 |
| B | RANDOLPH S MARTIN | 03/02/2004 | 03/02/2004 | 41.60 | 7.02 | 7.02 |
| B | RANDOLPH S MARTIN | 03/03/2004 | 03/03/2004 | 41.60 | 7.02 | 7.02 |
| B | RANDOLPH S MARTIN | 03/04/2004 | 03/04/2004 | 41.60 | 7.02 | 7.02 |
| B | RANDOLPH S MARTIN | 03/05/2004 | 03/05/2004 | 41.60 | 7.02 | 7.02 |

TOS (Type of Service) Key:     I = Medicare Part A (Inpatient, Home health, Skilled Nursing, Outpatient Services)

B = Medicare Part B (Professional Medical Services)

O = Medicare Part A (Outpatient Services)

# PAYMENT SUMMARY FORM

Print Date: September 13, 2004

* Total Conditional Payment Amount: $24,901.83

Beneficiary Name: Gustave E. Bredemeyer          HIC#: 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A          Date of Incident: 02/28/2004

* Total Conditional Payment Amount Is Subject To Change If Additional Payments Are Made.

| TOS | Provider Name | Date of Service | | Total Charges | Reimbursed Amount | Conditional Payment Amount |
|---|---|---|---|---|---|---|
| B | ROBERT K HAAG | 04/09/2004 | 04/09/2004 | 41.50 | 7.32 | 7.3 |
| B | STEPHEN MAYER | 03/13/2004 | 03/13/2004 | 41.60 | 7.02 | 7.0 |
| B | STEPHEN J PINEDA | 02/28/2004 | 02/28/2004 | 76.77 | 56.22 | 56.2 |
| B | STEVEN J JACKMAN | 02/28/2004 | 02/28/2004 | 41.50 | 6.46 | 6.4 |
| B | STEVEN J JACKMAN | 02/28/2004 | 02/28/2004 | 41.50 | 6.46 | 6.4 |
| B | STEVEN J JACKMAN | 02/28/2004 | 02/28/2004 | 208.00 | 41.90 | 41.9 |
| B | STEVEN J JACKMAN | 02/28/2004 | 02/28/2004 | 929.50 | 151.44 | 151.4 |
| B | STEVEN J JACKMAN | 02/28/2004 | 02/28/2004 | 948.00 | 109.63 | 109.6 |
| B | TERRENCE L PENCEK | 02/28/2004 | 03/01/2004 | 480.00 | 71.73 | 71.7 |
| B | TODD  ANDERSON | 03/07/2004 | 03/01/2004 | 355.00 | 11.21 | 11.2 |
| B | TODD  ANDERSON | 03/11/2004 | 03/07/2004 | 41.50 | 7.32 | 7.32 |
| B | WILLIAM D MOORE | 02/29/2004 | 03/11/2004 | 415.00 | 148.13 | 148.1 |
| | | | 02/29/2004 | 41.50 | 7.32 | 7.32 |

$24,901.83

TOS (Type of Service) Key:     I = Medicare Part A (Inpatient, Home health, Skilled Nursing, Outpatient Services)
B = Medicare Part B (Professional Medical Services)
O = Medicare Part A (Outpatient Services)

PLEASE MAKE CHECK PAYABLE TO:

ADMINASTAR FEDERAL

AND SEND TO THE ADDRESS BELOW:

AdminaStar Federal, Inc.

IL MSP – Med A – Liability

Lockbox # 660060

Indianapolis, IN   46266-0060

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that service of the foregoing has been made upon the following

individual by depositing a copy thereof in the United States mail, postage prepaid, addressed to:

        Sangamon County Circuit Clerk
        7th Judicial Circuit
        P.O. Box 1299
        Springfield, IL 62705-1299

        Fred W. Nessler
        Attorney for Plaintiff
        536 N. Bruns Lane
        Suite One
        Springfield, IL 62702

        Memorial Medical Center
        701 N. First Street
        Springfield, IL 62781

        Illinois Medicaid
        P.O. Box 19129
        Springfield, IL 62794-9129

        s/ James A. Lewis

May 4, 2005